## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**HADRIAN MATTHEWS** | Crim. No. 20-976 (KM)<br><br>**OPINION & ORDER** |

   Defendant Hadrian Matthews is charged with narcotics and firearms offenses. Now before the Court is his motion to suppress evidence (DE 29) Briefing is complete. (*See* DE 31, 33) On March 29, 2022, the Court convened a hearing, at which counsel agreed that an evidentiary hearing was not necessary, but proffered oral argument on the motion. The court reserved decision. (DE 39)[1] For the reasons stated herein, the suppression motion is granted as to the items seized from the garage, but otherwise denied.

## FACTUAL BACKGROUND

   On October 8, 2019, members of the East Orange Police Department Narcotics and Violent Crimes Task Force, as part of an ongoing narcotics investigation, set up surveillance focusing on a multi-residential apartment building at 630 Williams Street (the "Residence"), where defendant Matthews occupied Apartment # 1. A white Honda Accord pulled up to the building. The driver, Sebastian D. Swaby, got out of the Honda and walked to the front porch of the Residence, carrying a black backpack. The defendant here, Mr.

---

[1]   The suppression motion was part of an omnibus motion seeking miscellaneous relief. The Court rules on those other components of the omnibus motion from the bench, and those rulings are embodied in a separate order.

Matthews, came out of the Residence and spoke with Swaby. Swaby handed Matthews some money and the two entered the Residence.

An hour later, Swaby emerged from the Residence with a small item in his hand, which he appeared to sniff and place in his right front pants pocket. He drove off in the Honda, followed by some of the officers, who conducted a traffic stop. Approaching the Honda, they smelled marijuana. The officers recovered 17 grams of marijuana from Swaby's right front pocket. Swaby was arrested and charged, and also issued a traffic summons for illegally tinted windows.

About an hour later, the other officers saw Mr. Matthews leave the Residence with a maroon backpack and get into the driver's seat of a silver Nissan 370-Z. The officers followed the Nissan and conducted a traffic stop. The defendant admitted he did not have his driver's license with him. The officers smelled marijuana, and saw in plain view two marijuana cigars or "blunts" in the front cupholder. From the backpack, which was on the front passenger seat, they recovered approximately 10 grams of marijuana.[2] Mr. Matthews was charged locally, and $600 was recovered in a search incident to arrest.

The officers obtained telephonic approval for a search warrant from the Hon. M. Hawkins-Taylor of the East Orange Municipal Court, Essex County. The warrant authorized a search of 630 William Street, Apartment #1 East Orange, New Jersey (*i.e.,* the address of the Residence), as well as a 2009 Nissan 370Z, NJ Registration JN1AZ44EX9M404777 (*i.e.,* the automobile in which Mr. Matthews was arrested). The application was based on the essential facts related in the preceding three paragraphs.

Executing the warrant at the Residence, the officers recovered the following:

---

[2]    The officers opined that the marijuana seemed to be packaged for distribution. It was in two small packets, one containing 6 grams and the other 4 grams. The packaging alone, without context, would not indicate whether Matthews was the distributor or the distributee.

a. First Bedroom:

    i. Under a pillow on the bed, a Glock semi-automatic .40 caliber firearm, bearing serial number LCR929 ("Firearm- 1"), which was loaded with six .40 caliber ball point rounds of ammunition in an extended magazine. Firearm-1 had been reported stolen from South Carolina;

    ii. In the top drawer of a nightstand to the right of the bed, a Smith & Wesson .40 caliber semi-automatic handgun model SW40VE ("Firearm-2"), bearing serial number PBT5874, which was loaded with five .40 caliber ball point rounds of ammunition in an extended magazine.

b. Living Room:

    i. Inside of the coffee table, a 9-millimeter Taurus semi-automatic Millennium G2 firearm, bearing serial number TIR53725 ("Firearm-3"), which was loaded with twelve 9 millimeter ball point rounds of ammunition;

    ii. Inside of the coffee table, approximately $38,335.00 in U.S. currency;

    iii. A large AWS digital scale;

    iv. Twenty-six vacuum sealed clear plastic bags containing approximately 1,827 grams of marijuana;

    v. Four glass jars containing a total of 3,636 grams of marijuana;

    vi. Inside of the sofa seat cushions, a Stevens 311 12-gauge shotgun, bearing serial number B498218 ("Firearm-4"), which appeared to have a modified barrel;

    vii. Inside of the sofa seat cushions, a Bulldog .44 caliber special revolver, bearing serial number 12-05698 ("Firearm-5"); and,

    viii. Fifteen 12-gauge shotgun shells and two 16 gauge shotgun shells.

c. Second Bedroom:

    i. Inside of three garment bags, forty-eight vacuum sealed bags containing approximately 25,575 grams of suspected marijuana;

    ii. Inside of a suitcase, twenty-two vacuum sealed bags containing 11, 757 grams of suspected marijuana; and,

    iii. Inside of a duffel bag, eleven vacuum sealed bags containing 5,702 grams of suspected marijuana.

  d. Home Gym:

    i. One-thousand two hundred and forty-six vape cartridges from various companies.

  e. Garage:

    i. Five vacuum sealed bags containing approximately 1,758 grams of suspected marijuana.[3]

As a result of the search, Mr. Matthews was charged locally with a variety of drug and firearms offenses under New Jersey law. Those charges were dropped in favor of federal prosecution.

Mr. Matthews was initially charged federally in a criminal complaint. On November 6, 2019, Matthews was charged in a three-count Indictment, comprising Count One (possession with intent to distribute marijuana, 21 U.S.C. § 841(a)(1) & (b)((1)(D)); Count Two (possession of four handguns in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A)(i)); and Count Three (possession of a short-barrel shotgun in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(B)(i)).

**DISCUSSION**

Mr. Matthews seeks suppression of the firearms, ammunition, and drugs recovered from the Residence and garage on several grounds.

**A. The automobile stop of Swaby**

Mr. Matthews first challenges the basis for the initial automobile stop of Swaby, which he characterizes as the source of all the searches that followed.

---

[3]    Also found within the garage was a motorcycle that was not registered to the Defendant and did not appear to belong to him. The Detectives recovered small amounts of THC, codeine and mushrooms from the Residence as well.

Apparently the search warrant for the Nissan did not yield any further evidence beyond what was seized at the time of the automobile stop.

Mr. Matthews lacks standing to challenge the search of Swaby's car. It is axiomatic that Fourth Amendment rights are personal. A person may obtain suppression based on violation of that person's own privacy rights, not the privacy rights of another. Thus, in *Rakas v. Illinois,* 439 U.S. 128, 99 S. Ct. 421 (1978), the Supreme Court denied standing to a criminal defendant who challenged the search of a car owned by another.[4] The Court observed that "[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Id.* at 134. *Rakas* explicitly rejected the so-called "target theory" that a person could challenge a search based solely on the fact that it yielded evidence to be used against that person. Evidence is not "tainted" for all purposes by an illegal search and seizure. The person who seeks to invoke the exclusionary rule must be the person whose privacy rights were violated by the search and seizure. *See United States v. Payner,* 447 U.S. 727, 100 S. Ct. 2439 (1980) (rejecting defendant's attempt to suppress incriminating documents illegally seized from the briefcase of a third-party bank officer).

At oral argument, counsel for Matthews necessarily conceded those standing principles. But there, and in his briefing, he suggested a distinction: He was not, he said, challenging the auto stop as such. Rather, he was arguing

---

[4]     Actually, *Rakas* emphasized that the issue was not really "standing in the traditional sense, but rather the substantive scope of Fourth Amendment rights. 439 U.S. at 140; *see also United States v. Mosley*, 454 F.3d 249, 253 n.5 (3d Cir. 2006). Nevertheless, the terminology has taken root, and is convenient.

     In *Rakas*, as it happened, the person seeking suppression was a passenger in the car. That fact pattern can give rise to certain complexities, arising from the distinction between an illegal automobile search and an illegal automobile stop, which necessarily constitutes a seizure of the passengers. *See Brendlin v. California*, 551 U.S. 249, 258, 127 S. Ct. 2400 (2007). But that distinction only underlines the point here: it is only because the passenger has been personally seized by an illegal car stop that the passenger can suppress evidence obtained as a result. *See United States v. Mosley*, 454 F.3d 249, 251 (3d Cir. 2006); *Brendlin, supra* (approving *Mosley*); *United States v. Blackshear*, No. CRIM.A. 11-227, 2011 WL 5129952, at *6 (E.D. Pa. Oct. 28, 2011), *aff'd,* 532 F. App'x 316 (3d Cir. 2013). Here, Mr. Matthews was neither the owner of nor a passenger in Swaby's car.

that evidence obtained in the illegal Swaby automobile stop contributed to probable cause for the search warrant, which yielded evidence against Matthews. That latter evidence, Matthews argues, was the "fruit" of the "poisonous tree" that was the illegal Swaby auto stop. The "poisonous tree" doctrine, however, is premised on the initial evidence being validly suppressed (*i.e.,* on the tree having been "poisonous"), and extends the scope of the exclusionary rule to the "fruits" (*i.e.,* the evidence derived therefrom). The poisonous tree doctrine does not negate the principle that the initial search, must have violated the Fourth Amendment rights of the person seeking suppression, and not someone else.[5] I therefore find the proffered distinction unconvincing.

The motion to suppress, insofar as it is premised on the allegedly illegal stop of Swaby's car or evidence derived therefrom, is therefore denied.

## B. The automobile stop of Matthews

As noted above, the officers later stopped the Nissan driven by Mr. Matthews. Matthews moves to suppress evidence directly obtained during that stop, as well as the fruits of the search warrant that relied on that evidence for probable cause. Because the Nissan was driven and owned by Matthews, standing is not an issue. I rule, however, that the stop was not illegal because

---

[5]     There is a broad view of the "poisonous tree" doctrine, expressed by Judge Nygaard in a "Coda" to his dissenting opinion in a nonprecedential case discussing a separate issue, which would not impose an independent standing requirement as to the suppressed *fruits* of an illegal search. *See United States v. Mitra-Hernandez*, No. 20-1175, 2022 WL 205419, at *11 (3d Cir. Jan. 24, 2022) (Nygaard, J., dissenting). But even under this view, the *original* search (the "tree") must have violated the personal rights of the defendant who seeks suppression of derivative evidence (the "fruits"). *Id.* ("While the fruit of the poisonous tree doctrine applies only when the defendant has standing regarding the Fourth Amendment violation which constitutes the poisonous tree, the law imposes no separate standing requirement regarding the evidence which constitutes the fruit of that poisonous tree.") (citing *United States v. Olivares-Rangel*, 458 F.3d 1104, 1117–19 (10th Cir. 2006)).

That fundamental requirement of standing as to the "tree" is not met here, because Mr. Matthews did not own and was not even present in Swaby's automobile when it was stopped.

it was supported by reasonable suspicion, and that the officers did not exceed the permissible scope of the stop when they seized the marijuana evidence.

A person may be subjected to a brief investigative stop based on reasonable suspicion of criminal activity. *See Terry v. Ohio,* 392 U.S. 1, 88 S. Ct. 1868 (1968). The principles of *Terry* apply to police traffic stops, whether based on reasonable suspicion that the occupants are engaged in criminal activity, *see Berkemer v. McCarty,* 468 U. S. 420, 439 (1984); *United States v. Mathurin,* 561 F.3d 170, 173–74 (3d Cir. 2009), or reasonable suspicion of violation of the traffic laws, *see United States v. Delfin–Colina,* 464 F.3d 392, 397 (3d Cir. 2006).

> We determine whether reasonable suspicion existed to support a stop under an objective standard and a totality of the circumstances approach. *See* [*Terry v. Ohio,* 392 U.S. 1, 21-22, 88 S. Ct. 1868 (1968)]; *Brown*, 448 F.3d at 246-47. That is, we consider whether "a reasonable, trained officer standing in [the detaining officer's] shoes could articulate specific reasons justifying" the stop. *Johnson v. Campbell,* 332 F.3d 199, 206 (3d Cir. 2003); *see also United States v. Cortez,* 449 U.S. 411, 417-18, 101 S. Ct. 690, 66 L.Ed.2d 621 (1981). The "subjective intentions" of the officers do not factor into our analysis. *Whren v. United States*, 517 U.S. 806, 813, 116 S. Ct. 1769, 135 L.Ed.2d 89 (1996); *see also United States v. Delfin-Colina*, 464 F.3d 392, 398 (3d Cir. 2006).

*United States v. Hester*, 910 F.3d 78, 87 (3d Cir. 2018).

Here, the officers on surveillance saw Swaby hand Matthews money and then enter the Residence. Swaby emerged an hour later holding a small packet, sniffed the packet, and placed it in his right front pants pocket. When he was pulled over by the police, the packet in his right front pants pocket turned out to contain marijuana. The police reasonably believed that he had obtained it from Matthews at the Residence. To be sure, that was not the only possible inference; the defense emphasizes that Swaby spent an hour in the Residence,

and suggests that he was there to give Matthews a haircut.[6] But marijuana trafficking was a reasonable inference; the police had at least reasonable suspicion, and indeed had probable cause, to arrest Matthews.

A little later, the officers saw Mr. Matthews leave the residence with a backpack and get into the Nissan. Their observations of what they took to be a marijuana transaction, confirmed by the recovery of the marijuana from Swaby, provided suspicion enough for a traffic stop, and they did stop the car. Added to the officers' pre-stop knowledge were the following post-stop facts: Mr. Matthews was unable to produce a driver's license. When speaking to him, the officers detected the smell of marijuana emanating from the passenger compartment. Still outside the car, the officers observed two marijuana blunts in the cup holder. Based on all the surveillance, physical, and olfactory evidence, the officers entered the car and opened the backpack, which contained a quantity of marijuana.[7] Each step of this process was justified under Fourth Amendment standards.

The observation of the two marijuana cigars in the car's cup holder was justified by the "plain view" doctrine. "The plain view doctrine is grounded on the proposition that once police are lawfully in a position to observe an item first-hand, its owner's privacy interest in that item is lost; the owner may retain

---

[6]    There is no evidence that the officers knew Swaby acted as a barber, or saw any tonsorial evidence that Matthews had just had his hair cut. Nor does the haircut interpretation explain the fact that Swaby paid Matthews, rather than the other way around.

[7]    Officers may, of course, broaden the scope of a reasonable-suspicion traffic stop based on their post-stop observations. For example, a traffic stop may be extended based on independent reasonable suspicion of an offense. *See Rodriguez v. United States*, 575 U.S. 348, 135 S. Ct. 1609, 1616-17 (2015). An officer may "expand the scope of a traffic stop and detain the vehicle and its occupants for further investigation if [the officer] 'develops a reasonable, articulable suspicion of criminal activity.'" *United States v. Frierson*, 611 F. App'x 82, 2015 WL 3485994 (3d Cir. 2015) (quoting *United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003)). Unsatisfactory responses to legitimate questions, furtive or suspicious activity, refusal to obey officers' justified instructions, and, *a fortiori,* observation of further infractions may furnish such a basis for extending a stop. *See, e.g., Illinois v. Wardlow*, 528 U.S. 119, 124 (2000); *United States v. Green*, 897 F.3d 173, 185–86 (3d Cir. 2018); *United States v. Moorefield,* 111 F.3d 10, 13-14 (3d Cir. 1997).

the incidents of title and possession but not privacy." *Illinois v. Andreas*, 463 U.S. 765, 771–72, 103 S. Ct. 3319, 3324 (1983). That doctrine permits officers to seize an item without a warrant if (1) they are at a lawful vantage point, (2) they see an item whose incriminating character is apparent without further investigation or manipulation, and (3) they have a lawful right of access to the item. *See United States v. Menon*, 24 F.3d 550, 559 (3d Cir. 1994) (citing *Horton v. California*, 496 U.S. 128, 141, 110 S. Ct. 2301, 2310 (1990)); *Arizona v. Hicks*, 480 U.S. 321, 107 S. Ct. 1149 (1987).

Those three requirements are illustrated by a comparison to *Texas v. Brown*, 460 U.S. 730, 739–40, 103 S. Ct. 1535 (1983), a case in which officers conducting a traffic stop seized certain drug evidence. Here, as in *Brown,* the officers conducted a valid traffic stop, were entitled to approach the car on foot, and therefore were at a lawful vantage point, from which they looked into the passenger compartment. *Brown* emphasized that there is no privacy interest in what an outside observer may see within a car's passenger compartment. What the officers saw and seized in *Texas v. Brown* was an opaque, knotted balloon, which, their experience taught them, was a common means of packaging narcotics. Here, similarly, an officer standing by the car could see the cup holder, containing marijuana cigars that looked and smelled like what they in fact were.

Finally, having seen this contraband, the officers were empowered to examine or seize it. Where an officer has probable cause to believe an automobile contains evidence of an offence, the so-called "automobile exception" permits a warrantless search of the vehicle. *See, e.g., Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710 (2009); *United States v. Donahue,* 764 F.3d 293, 300 (3d Cir. 2014). Here, probable cause is hardly the issue, in that the officers had actually observed the contraband. *See United States v. Williams,* 413 F.3d 347, 353 (3d Cir. 2005) (probable cause established by observation of leafy green substance). Seizure of the marijuana cigars was clearly permitted.

That leaves the backpack. As noted, the officers saw Mr. Matthews engage in what appeared to be a marijuana transaction, which was confirmed by the recovery of the marijuana from Swaby. They later saw Matthews leave the Residence, carrying the backpack, and drive off. When they approached the car, they detected the smell of marijuana coming from the passenger compartment. Such olfactory evidence, particularly when backed up by the circumstances described above, is sufficient to justify a warrantless probable-cause automobile search. *See, e.g., United States. v. Henley*, 941 F.3d 646, 653 (3d Cir. 2019) (smell of marijuana alone, if articulable and particularized, may establish probable cause); *United States v. Ramos,* 443 F.3d 304, 308–09 (3d Cir. 2006) (smell of marijuana detected 3 to 4 feet from car).

Where the automobile exception applies, its authorization extends to "every part of the vehicle and its contents that may conceal the object of the search." *Donahue,* 764 F.3d at 300; *see also United States v. Ross*, 456 U.S. 798, 825, 102 S. Ct. 2157, 2173 (1982). The backpack, on the front passenger seat, was reasonably perceived to be one likely source of the odor. (The marijuana blunts, too, could qualify, but the officers were not required to stop searching because some personal-use marijuana had been found, particularly where the evidence suggested trafficking.) Thus, in one recent case, the Third Circuit held that a driver's admission that he possessed a "blunt" in the center console of his car justified the officers' search of the passenger compartment of a car, plus the car's closed trunk. *United States v. Byrd*, 813 F. App'x 57, 61 (3d Cir. 2020). I rule that that the backpack search, too, fell within the scope of the automobile exception.

The motion to suppress, insofar as it is directed at the evidence seized from the Nissan, is denied.

**C. The search warrant**

The challenge to the search warrant has several facets.

*1. Probable cause*

First, defendant asserts a general challenge to the showing of probable cause to search the Residence. A search warrant, of course, shall issue only

upon a showing of probable cause that the premises to be searched contain evidence of a crime. U.S. Const., amend. IV. Probable cause means a "fair probability" that contraband or evidence of a crime would be found at the subject premises. *Illinois v. Gates*, 462 U.S. 213 (1983); *United States v. Conley*, 4 F.3d 1200, 1205 & n.2 (3d Cir. 1993); *see also Ornelas v. United States*, 517 U.S. 690, 698 (1996). The probable cause determination embodies a commonsense conclusion from the totality of the circumstances. As the name implies, probable cause involves likelihoods, not certainties, and does not require the police to rule out all possible alternatives. It is "a fluid concept— turning on the assessment of probabilities in particular factual contexts." *Gates*, 462 U.S. at 231–32.

One of the defendant's bases for challenging the probable-cause showing would depend on the Court's suppression of the evidence from the car stops. I have not suppressed that evidence, however, so it could permissibly go into the mix of information that Judge Hawkins-Taylor considered when issuing the search warrant.

The information supporting the search warrant application was not false or faulty, and it was adequate to set forth probable cause to search. As noted, the officers on surveillance saw Swaby hand Matthews money, enter the residence, and later emerge with a packet that turned out to contain marijuana. They could reasonably infer that a marijuana transaction had occurred within the Residence. When they stopped Matthews's car, they found two "blunts" as well as two distribution-sized packages containing small amounts of marijuana, and they recovered $600 from Matthews. There was good reason to believe that a search would yield evidence of marijuana trafficking from the Residence.

The defendant suggests that further investigative steps could have been undertaken. In particular, he suggests further surveillance to determine whether there was suspicious foot traffic to and from the Residence. To that contention, the adequacy of the information the officers *did* gather is sufficient rebuttal. Otherwise, the defendant simply suggests alternative explanations for

some of the facts, while ignoring others. It is possible, for example, that Swaby's payment of money to Matthews had nothing to do with his subsequent emergence from the Residence with a packet of marijuana. But that a marijuana transaction occurred was a fair inference. That inference was corroborated by the evidence seized as a result of the car stops, including marijuana and Matthews's $600 in cash.

These facts set forth a fair probability that evidence of marijuana trafficking would be found in the Residence.

### 2. Authority of municipal judge

Defendant also proffers that a municipal court judge is not authorized by New Jersey state law to issue a telephonic search warrant under N.J. Ct. R. 3:5-3. There is no doubt that a municipal court judge is generally authorized to issues warrants. *See* N.J. Ct. R. 3:5-1 (granting overall authority to "a judge of a court having jurisdiction in the municipality where the property sought is located"). There is also no doubt that the former requirement of "exigent circumstances" for issuance of a telephonic warrant, *see State v. Valencia,* 93 N.J. 126, 137, 459 A.2d 1149 (1983), is now defunct as a matter of New Jersey Supreme Court case law. That exigency requirement was declared defunct in 2009, *see State v. Pena-Flores*, 198 N.J. 6, 965 A.2d 114 (2009).[8] In addition, the Rule was amended by order dated October 8, 2013, well before the events of this case. *See* S. Pressler & P. Verniero, N.J. Ct. R. 3:5-3 (annot. ¶ 7). The defendant argues that the eventual amendment to the Rule was narrower than the language of *Pena-Flores* might have suggested, however. As amended, the Rule provides that "[a] *Superior Court Judge* may issue a search warrant upon sworn oral testimony of an applicant who is not physically present." N.J. Ct. R. 3:5-3(b) (emphasis added). The Rule also continues to refer to "exigent

---

[8]     As noted herein, however, the story does not end with *Pena-Flores*. The Court in one of the consolidated *Pena-Flores* cases stated that "we will amend R[ule] 3:5–3(b) to clarify the parity between the various methods for obtaining a warrant and to underscore that an officer may resort to electronic or telephonic means without the need to prove exigency." 198 N.J. at 35. Amendments to the Rule followed some years later.

circumstances" excusing the requirement of a written application. *Id.* The government responds that the authorization granted to a Superior Court Judge is not exclusive and therefore does not detract from the authority of a municipal court judge. More generally, the government argues, the Rule contains legacy language that has failed to keep pace with N.J. Supreme Court case law.

Whatever the merits of the parties' Rule-based arguments, suppression is not appropriate here.

To begin with, the defendant raises at best a state-law technicality that is not of federal constitutional stature. The defendant's arguments are ones of state law, and he does not claim that any Fourth Amendment standard was breached by a municipal judge's issuance of the warrant. Without more, there is no call for application of the federal exclusionary rule in such a situation.[9]

---

[9]     The general principle, easily stated but sometimes complex to apply, is succinctly summarized in *United States v. Coles*, No. 1:16-CR-212, 2021 WL 3290668 (M.D. Pa. Aug. 2, 2021):

> In federal prosecutions, however, admissibility of evidence is tested by its conformity to federal, not state, law. *See United States v. Rickus*, 737 F.2d 360, 363-64 (3d Cir. 1984); *United States v. Stiver*, 9 F.3d 298, 300 (3d Cir. 1993) (quoting *Rickus*, 737 F.2d at 363-64). . . . That is, "evidence obtained in accordance with federal law is admissible in federal court—even though it was obtained by state officers in violation of state law." *Rickus*, 737 F.2d at 363 (citing *United States v. Shaffer*, 520 F.2d 1369, 1372 (3d Cir. 1975)).

> Under federal law, "[a] magistrate judge may consider information communicated by telephone or other reliable electronic means when reviewing a complaint or deciding whether to issue a summons." Fed. R. Crim. P. 4.1(a). "Absent a finding of bad faith, evidence obtained from a warrant issued under this rule is not subject to suppression on the ground that issuing the warrant in this manner was unreasonable under the circumstances." *Id.* 4.1(c). *See also* Fed. R. Crim. P. 41(d)(3) (search warrant may be issued based on information communicated by telephone or electronic means in accordance with Rule 4.1); *see generally United States v. Rome*, 809 F.2d 665, 667 (10th Cir. 1987) ("We begin by stating that search warrants issued pursuant to Rule 41(c)(2) [the predecessor or current Rules 4.1 and 41(d)(3)] are to be judged by the same standards as any other search warrant.").

.

More importantly, the good faith exception would bar any suppression remedy here. The good faith exception incorporates earlier case law but received its classic statement in *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405 (1984). I recently summarized it thus:

> The good faith exception may bar application of the exclusionary rule "even though no probable cause to search exists." *United States v. Mortimer*, 387 F. App'x 138, 2005 WL 318650 (3d Cir. 2005) (quoting *United States v. Hodge*, 246 F.3d 301, 307 (3d Cir. 2001) (internal quotations omitted)).
>
> Under *United States v. Leon*, when an officer acts in the objectively reasonable belief that his conduct does not run afoul of the Fourth Amendment, the marginal benefits from suppressing the evidence do not match up to the substantial costs of excluding it. 468 U.S. at 922. In deciding whether the good faith exception applies, we ask "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. $92,422.57*, 307 F.3d 137, 145–46 (3d Cir. 2002) (quoting *United States v. Loy*, 191 F.3d 360, 367 (3d Cir. 1999)).
>
> *United States v. Gallo*, 110 F. App'x 265, 269–70 (3d Cir. 2004).
>
> The "good faith exception" is at its zenith when the officer, as the officers did here, seeks the authorization of a judicial officer by applying for a search warrant. "[T]he mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception." *Hodge*, 246 F.3d at 307–08; *accord United States v. Mortimer*, 387 F. App'x 138, 2005 WL 318650 (3d Cir. 2005); *Gallo*, 110 F. App'x at 269–70 (3d Cir. 2004).

*United States v. Dancy*, No. CR 19-658 (KM), 2020 WL 3446329, at *8–*9 (D.N.J. June 24, 2020).

As noted, the "mere existence" of a warrant generally suffices. Still, the parties agree that an officer's reliance on a warrant may be found unreasonable under four limited circumstances:

---

(1) where the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit;

(2) where the magistrate judge abandoned [her] judicial role and failed to perform [her] neutral and detached function;

(3) where the warrant was based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'; or

(4) where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*United States v. Zimmerman,* 277 F.3d 426, 436–37 (3d Cir. 2002) (quoting *United States v. Hodge*, 246 F.3d 301, 308 (3d Cir. 2001)); *accord United States v. Gallo*, 110 F. App'x 265, 269–70 (3d Cir. 2004).

The record here does not come close to engaging any of those four limitations on the good faith exception. There is no claim of recklessly false information in the affidavit. There is no indication that the municipal court judge was not neutral, and it is not claimed that she had any personal interest in the case. As I have already ruled, the showing of probable cause was adequate, was factual and not conclusory in nature, and *a fortiori* was not so defective that a reasonable officer should have second-guessed it. The warrant gave a particular description of the Residence and the evidentiary items to be seized from Apartment #1.[10]

The alleged defect in the warrant relates to whether a municipal court judge, as opposed to a Superior Court judge, could issue a telephonic warrant under these circumstances. The objection is fairly technical; it requires some legal interpretation and reconciliation of anomalies in the case law and the Rule, a task not ordinarily within the scope of a police officer's duties. The officers did right when they presented their application to the judicial officer who customarily hears search warrant applications. They were entitled to take

---

[10] The warrant adequately described Apartment #1 at the Residence and the items to be seized therefrom. A dispute over whether the warrant impliedly extended to the detached garage is discussed below.

the court's procedures as they found them, relying on the judicial officer's acting within her authority. Having done so, they would have been entitled to rely on the authorization of a warrant that was valid on its face, even if it later turned out to be unsupported by probable cause. And, as noted above, there was no such defect in the warrant or the underlying showing of probable cause, from a Fourth Amendment perspective.

In sum, the strong medicine of exclusion is not appropriately administered here, and the motion to suppress evidence seized from the Residence is denied.

### 3. The garage

The search warrant described the premises to be searched as consisting of "the premises of 630 William Street Apartment #1, East Orange, New Jersey 07017." In addition to the items seized from that apartment, the police also seized five vacuum sealed bags containing approximately 1,758 grams of marijuana from the building's detached garage. Defendant Matthews states, correctly, that the search warrant did not explicitly describe or even mention the garage as part of the premises to be searched. He therefore separately challenges the search of the garage, because it exceeded the mandate of the Fourth Amendment that a warrant "particularly describe[e] the place to be searched and the persons or things to be seized." U.S. Const. amend. IV. In this limited respect, I will grant suppression and exclude from evidence the marijuana seized from the garage.[11]

The government argues that Mr. Matthews lacks standing to oppose the search of the garage, and that in any event the warrant did impliedly authorize a search of "premises" including the garage.

I first consider standing, an issue as to which the defendant has the burden. *See United States v. Hebron*, 243 F. Supp. 2d 90, 92 (D. Del. 2003)

---

[11]     Defendant also suggests more broadly that the entire warrant fails for lack of particularity. I disagree. The warrant very particularly describes the apartment. That the police searched the garage may suggest that they exceeded the scope of the warrant, but it does not suggest that the warrant itself was faulty.

("The burden of establishing standing to raise a Fourth Amendment challenge rests with the defendant.") (citing *United States v. Salvucci*, 448 U.S. 83, 86–95, 100 S. Ct. 2547 (1980)). "Fourth Amendment standing requires that the individual challenging the search have a reasonable expectation of privacy in the property searched ... and that he manifest a subjective expectation of privacy in the property searched [.]" *United States v. Correa*, 653 F.3d 187, 190 (3d Cir. 2011). The government states that tenants of a multi-unit dwelling have no reasonable expectation of privacy in "common areas" of that building, and suggests that the garage is such a common area.

*Correa,* one of the two main authorities cited by the government, is not on point. There, the defendant claimed an expectation of privacy in common areas of an apartment building, such as the building's hallways. 653 F.3d at 190–91. The Court disagreed, because even if the main door of the building was locked, thus excluding outsiders, all the tenants still had free and common access to the hallways, and any one of them could admit outsiders as well. There is no showing here, however, that the tenants shared access to the garage or admitted others to the garage. There is no indication that the garage, like the apartment building hallway in *Correa,* was occupied by tenants in common and barred only to outsiders.

The government's other main authority, *United States v. Acosta,* 965 F.2d 1248, 1253 (3d Cir. 1992), involved an officer's entering a fenced backyard. The Court of Appeals ruled that the defendant, the tenant of one of several apartments, had no privacy interest in what the officer could observe from the backyard. The lease gave the tenant no rights to the backyard. The landlord informally permitted this tenant (but not other tenants) to use the backyard, but in fact, the tenant made very little use of the yard. The landlord himself, however, continued to use the yard, stored his boat there, and retained the power to authorize others to use the yard.

Here, the situation is somewhat different. This is not a backyard, open to view. It is a locked, detached garage—a separate building—in which private

17

items were concealed and stored. The officers who obtained and executed the
search warrant apparently knew nothing of the garage beforehand. While in
Matthews's apartment, they discovered a key to the garage, which is what led
them to the garage in the first place. In short, the garage was locked, and
Matthews possessed the key. Moreover, he stored contraband, consisting of
some 1.7 kg of marijuana, there. These circumstances suggest that he
possessed an actual, reasonable and subjective expectation of privacy in the
garage.

The government's evidence to the contrary is real, but not specific or
persuasive. The government attorneys point to the presence of a motorcycle in
the garage and state that it was not registered to Mr. Matthews. That small fact
has yielded a rich harvest of conjecture. The government posits that the
motorcycle must have belonged to another tenant, but do not reveal to whom it
was registered, and hypothesize further that "other tenants were storing items
within the garage." Of course, it is possible that another tenant had a key, but
there is no evidence to that effect.

Although the issue is close, and the record sparse, I find that there is
enough evidence that Matthews possesses standing with respect to the garage.
I therefore consider whether the officers exceeded the scope of the warrant and
violated the Fourth Amendment when they searched the garage.

Regarding the scope of the warrant, the government relies entirely on
*United States v. Bansal,* 663 F.3d 634 (3d Cir. 2011). *Bansal* upheld those
officers' search of a detached garage, finding that it fell within the warrant's
description of "the premises known and described as 23 Garden City Avenue[,]
Point Lookout, New York." *Id.* at 663.[12] The "plain text" of the warrant's
description, the Court of Appeals held, encompassed the garage, which was

---

[12]     The main building is described as a "house." The agents executing the warrant
were apparently surprised to discover that the garage was detached, and sought
guidance from an Assistant U.S. Attorney before entering. The Court of Appeals found
it unnecessary to reach the issues of good faith or privacy interests in the curtilage of
the house, because the language of the warrant itself was sufficient to dispose of the
issue. *Id.* at 663

part of the "premises" at 23 Garden City Avenue. Not so here, however; this search warrant reads differently. The Matthews search warrant describes the place to be searched, not just as the "premises of [street address]," but as a particular apartment: "the premises of [street address] *Apartment #1*." (Emphasis added.) That pinpointing of one apartment makes sense, because the building at 630 William Street contains multiple rental apartments, only one of which was connected by the evidence to Mr. Matthews or marijuana dealing. Because here the word "premises" is modified by "Apartment # 1," the plain-language reasoning of *Bansal* does not apply. The search of the detached garage was not within the scope of the warrant, and the marijuana seized from the garage will be suppressed.[13]

## ORDER

For the foregoing reasons,

IT IS, this 4th day of April, 2022,

ORDERED that the motion to suppress evidence (DE 29) is GRANTED as to the items seized from the attached garage (search warrant inventory item e, Garage: i. Five vacuum sealed bags containing approximately 1,758 grams of suspected marijuana); and it is further

ORDERED that the motion to suppress evidence is in all other respects DENIED.

/s/ Kevin McNulty

_____

**KEVIN MCNULTY, U.S.D.J.**

---

[13]     It could be argued that the garage key, found within Apartment #1, suggested probable cause to search the garage, where the objects of the search could be found. The government does not attempt to justify the garage search under any of the warrant exceptions, however, and there appears to be no reason that the officers could not have returned to the municipal judge and sought an additional telephonic warrant for the garage.